■ In the Matter of the Arbitration between ROSALYN SILVERMAN, as Executrix of BEN SILVERMAN, Deceased, Respondent, and BENMOR COATS, INC., Appellant. BENMOR COATS, INC., Appellant, v ROSALYN SILVERMAN, Individually and as Executrix of BEN SILVERMAN, Deceased, Respondent. — Order and judgment (one paper) of the Supreme Court, New York County (Lane, J.), entered March 9, 1982, confirming the award of the arbitrator affirmed, with costs. The facts are adequately stated in the memorandum of our dissenting brother. Our disagreement with him flows from two facts: first, the arbitrator was aware of the subordination agreement. To insure that the award did not affect the rights of the parties sought to be protected thereby he directed that payments to be made on account of principal be limited to "an amount equal to Thirty Five Percent (35%) of BENMOR's *after-tax net income* of the prior calendar year" (emphasis supplied). To make certain that net after-tax profits were not absorbed by payments to its officers as salary and by travel and entertainment expenses, he limited the specific dollar amount thereof. Whether in so doing he exercised his discretion wisely or not is not before us. What is before us is the issue of his power. Since payments on account of principal are limited to net after-tax profits, the creditors for whose benefit the loan was subordinated cannot be injured thereby. Hence, his power was properly exercised. Secondly, the officer of the Century National Bank in charge of the account of Benmor Coats, Inc., now asserts that the subordinated loan cannot be repaid without the consent of the creditors for whose benefit the loan was subordinated and that the bank does not consent. However, she does not deny that she testified at the second session of the arbitration proceeding and stated that the bank had no objection to payment by Benmor of a portion of its *profits* to satisfy its indebtedness to the estate of the subordinating creditor. Although endeavor is made by counsel for Benmor in a footnote in a reply affidavit to meet this allegation, it is noteworthy that nowhere is there an assertion by Mrs. Pace, the bank officer, that she did not so testify. Without speculating on the reason for the arbitrator's award it is obvious to us that Benmor and its officers are attempting to utilize an agreement made in good faith by the widow and executrix of the deceased partner and subordinated creditor as a basis for never repaying the loan. The remedy fashioned by the arbitrator avoids imperiling the creditors for whose benefit the subordination agreement was made while, at the same time, affording the subordinated

creditor some hope of repayment. Concur — Sullivan, J. P., Bloom, Fein and Alexander, JJ.

Silverman, J., dissents in a memorandum as follows: I would reverse the judgment appealed from, deny the application to confirm the arbitration award, and grant the application to vacate the award on the ground that the arbitrator "exceeded his power" (CPLR 7511, subd [b], par 1, cl [iii]), in that the award directs the payment of a subordinated debt whether or not the claims of the creditors to whom that debt is subordinated (the subordinatees) have been satisfied, and does so in a proceeding in which neither the subordinatees nor anyone representing the subordinatees is a party. The award thus inequitably affects the rights of persons not parties to the arbitration (cf. CPLR 1001, subd [a]), and in whose absence an effective judgment cannot be rendered (cf. CPLR 1001, subd [b], par 4; see, also, *City of New York v Long Is. Airports Limousine Serv. Corp.*, 48 NY2d 469, 475). A subordination agreement is by its nature one to which the subordinatee in whose favor it is made has an essential legal interest either as a direct party or as a third-party beneficiary. A subordination agreement or a subordinated loan is a form of capitalization. So far as the subordinatee is concerned, the subordinated loan is something like a preferred stock, an investment which has priority over common stock but which is not to be repaid before the unsubordinated creditors' claims are satisfied. The subordinated loan is a cushion of protection for the unsubordinated debts. Like capital stock it is in essence a trust fund for the unsubordinated creditors. (In the present case the provision of the agreement of Nov. 27, 1979, par 5.04 referred to below, "irrevocably" appointing the two remaining stockholders as "attorneys-in-fact, coupled with an interest" to execute documents to evidence the continued subordination indicates the quasi-permanent nature of the investment and subordination of the subordinated loan.) Yet in the face of a conceded subordination agreement, and in an arbitration to which the subordinatees are not parties, the arbitrator directed the debtor on certain conditions to pay principal and interest on the subordinated debt without regard to whether the subordinatees' claims have been paid, thus in essence affecting the rights of persons not parties to the arbitration and directing the parties to the arbitration to disregard their contract with the subordinatees who were not parties to the arbitration. In the present case petitioner estate of Ben Silverman, the majority stockholder of debtor Benmor Coats, Inc., was owed a sum of $64,000 lent by the decedent, which loan was a subordinated loan. While the original subordination agreement is not in the record, a later form of subordination agreement, executed between the debtor, the subordinated creditor and National Credit Office, states that it is "for the benefit of all individuals, partnerships or corporations who are, or at any time hereafter may become, a creditor or an assignee of a creditor of the above captioned company (hereinafter referred to as the 'Debtor')." And that "the undersigned does hereby subordinate the payment of any and all amounts now owing or which hereafter may be or become owing by the Debtor to him no matter how arising, to the payment in full of all debts or obligations now or hereafter owing by the Debtor * * * The undersigned each further agrees not to accept any payment of principal or interest in whole or in part of any claims against the Debtor * * * until all indebtedness covered by this Subordination Agreement shall be paid." We need not however rely on this later form of subordination agreement. The record contains the agreement of November 7, 1979, pursuant to which the arbitration was held. That agreement is an agreement between the beneficiary and executrix of the estate of the deceased subordinated creditor; two other smaller stockholders of the debtor Benmor; and Benmor, the debtor. The agreement covers a number of matters including the

purchase by Benmor of all the estate's shares and provisions relating to the subordinated loan. With respect to the subordinated loan the agreement recites that there is currently owing to the estate $64,000, representing sums lent by the decedent to Benmor "(the 'Subordinated Loan') which is subordinated to the Century National Bank and Trust Co., 1372 Broadway, New York, New York (the 'Bank') and to creditors". Article 5 of the agreement is entitled "Subordinated Loan". It recites in paragraph 5.01 that the decedent Ben Silverman had lent to Benmor $70,000 "which was intended to be subordinated to the debts owed by Benmor; and pursuant to that understanding, certain documents evidencing the subordination of the loan were executed by Ben Silverman." (It further recites that the subordinated loan had been reduced because of various adjustments to $64,000. The agreement provides in paragraph 5.02 that in January, 1980 the parties shall meet to negotiate repayment of the subordinated loan "subject to the consent of the Bank and trade creditors, and subject further to the business conditions then affecting Benmor." There are provisions for the payment of interest on the subordinated loan. The two smaller stockholders (now become the sole stockholders) are appointed in paragraph 5.04 "irrevocably" as the estate's attorneys in fact "coupled with an interest" to execute documents "to evidence the continued subordination of the unpaid balance of the Subordinated Loan until the entire principal has been satisfied on the terms and conditions herein set forth." "Any dispute with respect to the obligations of this Paragraph 5 including the ability of Benmor to make payments shall be settled by Arbitration in the City of New York". (Par 5.05.) Although not named as parties to the agreement and not signatories to it, the bank and the trade creditors were third-party beneficiaries of the subordination provisions of this agreement as well as of the underlying subordination agreement. The bank contends that it has not consented to any payment on the subordinated debt. The parties were apparently unable to negotiate repayment in accordance with paragraph 5.02. Accordingly a demand for arbitration was served by the subordinated creditor, the estate. It was addressed only to the debtor Benmor. It quoted the arbitration clause (a copy in the record has the word "ability" underlined in the phrase "the ability of Benmor to make payments"). It stated: "NATURE OF DISPUTE: Benmor has failed to make payment as required by paragraph 5. CLAIM OR RELIEF SOUGHT: (amount, if any) Interest payments are in default. Principal payment as per paragraph 5." After hearings, the arbitrator rendered his award. The award obviously considered the debtor's ability to pay. It even provided: "Until BENMOR repays the Loan, in full, the attorneys-in-fact for BENMOR [sic], may continue to execute the documents referred to in paragraph 5.04 of the November 1979 Agreement." But this provision of the award is rendered almost meaningless by the unconditional provisions of the award for the payment of certain sums on account of interest and principal on the subordinated debt as well as additional payments of principal equal to 35% of Benmor's after-tax net income. There was no provision that such payment should require the consent of the subordinatees as required by paragraph 5.02. The award thus requires the debtor to breach the contractual provision for the protection of the subordinatees. It does so in an arbitration proceeding and under an arbitration agreement to which the subordinatees were not parties. There remains the question whether appellant, the debtor Benmor, having participated in the arbitration, has standing to question the validity of the arbitration award. I note that the demand for arbitration does not give any clear notice that what will be sought is a direction for payment which may violate the subordination agreement. But in any event, in my view, the arbitrator has exceeded his power by rendering an award which requires the

debtor to breach his contract with a third person. In such circumstances, the award may be vacated "on the application of a party who either participated in the arbitration or was served with a notice of intention to arbitrate if the court finds that the rights of that party were prejudiced by * * * (iii) an arbitrator, or agency or person making the award exceeded his power or so imperfectly executed it that a final and definite award upon the subject matter submitted was not made". (CPLR 7511, subd [b], par 1.) I think it is clear that the debtor is prejudiced by the award because (a) it puts the debtor in the position where the debtor must either breach its contract with or for the benefit of subordinatees or not comply with the award, and (b) as the affidavit of the bank officer states: "2. The Court must realize that Benmor's financial condition is not strong. A substantial part of the Bank's willingness to extend credit to Benmor is its faith in the company and the Subordination Agreement. The Subordination Agreement was signed by Benmor and Respondent [the estate]. It provides that the Subordinated Loan cannot be repaid without our consent. *We do not consent.* A violation of the Subordination Agreement, even if ordered by an arbitrator, would be so substantially an act of bad faith as to virtually require that we withdraw our credit. I testified to all of the foregoing under oath at the Arbitration hearing. 3. If the Subordinated Agreement is violated, the Bank may also consider legal recourse. The Bank is a third party beneficiaries [*sic*] of the Subordinated Agreement and will pursue its rights to protect its interest."